UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00656-H

DAVONNE MASSEY AND TIRANA DISHMAN            PLAINTIFFS

v.

BELL SOUTH TELECOMMUNICATIONS, LLC           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Davonne Massey and Tirana Dishman, have moved for reconsideration of the Court's order dated July 10, 2014, which granted summary judgment to Defendant. Plaintiffs raise some legitimate questions about the Court's determination that certain statements by Kelly Borders and Marie Kaelin were inadmissible hearsay and could not be considered.

I.

The Court detailed the relevant facts in the July 10 order but will begin with a brief summary in the light most favorable to Plaintiffs. Plaintiffs sued BellSouth Telecommunications under both the interference and retaliation theories of recovery under the Family Medical Leave Act but later withdrew their interference claims. They allege that BellSouth took a number of adverse employment actions—including increased monitoring, formal disciplinary procedures, and their ultimate terminations—at least in part because both took FMLA leave.

Both Massey and Dishman were Sales Associates at a BellSouth call center in Louisville, Kentucky, where they provided customer service and sold various products and services. As Sales Associates, Plaintiffs were required to adhere to a Code of Ethics and to meet certain objectives. For example, sales associates were required to authenticate customer calls and were

not allowed to "stack" promotions by giving customers more discounts than BellSouth wanted to offer. To ensure they were following the rules and meeting these objectives, BellSouth could listen to these calls in a number of ways: managers in the call center could observe the calls by sitting next to the Sales Associates; these same managers could listen into the calls remotely (either in real-time or later as recordings); and members of the BellSouth National Observation Team in Atlanta would randomly observe call centers throughout the company. If the National Observation Team heard an improper call, they would refer the matter to local management to handle the matter. Local management used a discretionary four-step progressive discipline process: (1) counseling; (2) warning; (3) suspension or letter in lieu of suspension; and (4) termination. Depending on the nature of the violation, management could exercise discretion to skip steps and impose a higher level of discipline or forego formal discipline altogether.

By the time they were terminated, both Plaintiffs had received negative performance reviews and accumulated substantial disciplinary records. Between February 2009 and October 2010, Massey received ten warnings for violating company policy; in August 2010, she was suspended for one day for failing to authenticate a customer during a phone call. Dishman had a similar record. Between January 2008 and August 2010, she also received ten warnings for various violations and was suspended in August 2010 for improperly stacking promotions to make additional sales.

While the National Observation Team in Atlanta detected many of these infractions, Marie Kaelin was Plaintiffs' direct supervisor in Louisville making many of the disciplinary decisions. She signed many of the disciplinary forms in both Plaintiffs' employment records. Kelly Borders—Kaelin's supervisor and the Center Sales Manager—was also copied on several

reports from the National Observation Team; while she was aware of the misconduct and discipline, her role in the decision-making here is not entirely clear.

Kaelin disciplined Massey for several different violations, but her repeated failure to authenticate customer accounts ultimately led to her termination in October 2010. On August 5, 2010, the National Observation Team observed a call where Massey failed to properly authenticate a customer. They referred the issue to Marie Kaelin and Kelly Borders, who ultimately suspended Massey for a day. On October 18, 2010, the National Observation Team again observed a call where Massey failed to authenticate a customer account. This time, the matter was referred to others in Massey's department. Barbara Deckard held an investigatory meeting in Louisville; Joe Feldcamp reviewed Massey's disciplinary history and referred the matter to Shannon Sykes, the Employee Relations Manager in Atlanta; Sykes agreed that Massey should be terminated and Barbara Deckard ultimately terminated Massey for misconduct—non-compliance with applicable legal or regulatory requirements.

Dishman's story is similar. Kaelin also disciplined her for numerous violations before her termination for stacking promotions in September 2010. On September 21, 2010, Jennifer Zebley—a Sales Coach who had never before supervised Dishman—observed one of Dishman's calls where she improperly offered a customer more than one promotion. Zebley held an investigatory meeting, shared her findings with multiple supervisors (including Kelly Borders), and ultimately terminated Dishman for misconduct—sales integrity.

II.

Plaintiffs filed this lawsuit because they believe Kaelin and Borders disciplined them and subjected them to greater scrutiny for taking FMLA leave. Massey took approved FMLA leave for a variety of reasons between 2006 and April 2010 (more than six months before her

3

termination). Dishman took several days of approved FMLA leave between December 2009 and March 2010 (also more than six months before her termination).

To support their claims, both Plaintiffs claim that Marie Kaelin, their supervisor, informed them that BellSouth officers were looking for reasons to terminate their employment because they had utilized FMLA leave. In Massey's deposition, she testified: "it was actually told to me by my supervisor [Marie Kaelin], that Kelly [Borders] wanted her to listen to me until she got something on me to fire me because I take FMLA." Dishman allegedly heard a similar comment. She testified that Marie Kaelin pulled her aside and said "whatever you do, don't miss any more days. . . . You know that they're trying to get rid of you, because you use FMLA . . . I'm supposed to be listening to every single one of your calls right now."

In the initial order granting BellSouth's motion for summary judgment, the Court declined to consider the testimony of Massey and Dishman regarding the statements of Kaelin and Borders, labeling them as inadmissible hearsay. The Court then held that, without these statements, Plaintiffs had produced no evidence to establish the causation element of their prima facie retaliation case. Moreover, the Court ruled that Plaintiffs had not put forth any evidence establishing that BellSouth's actual business reasons for terminating them—namely, their extensive disciplinary records—were mere pretext.

Plaintiffs have now asked the Court to reconsider its determination that the statements attributed to Marie Kaelin and Kelly Borders were inadmissible hearsay. A motion to reconsider is generally treated as a motion to alter or amend a judgment under Rule 59(e). *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617 (6th Cir. 2002). These motions are "extraordinary in nature and so should only be granted sparingly." *Gesler v. Ford Motor Co.*, 185 F. Supp.2d 724, 729 (W.D. Ky. 2001). The Court will grant a Rule 59 motion in four circumstances: (1) a clear error of law;

4

(2) newly discovered evidence; (3) an intervening change in controlling law; or (4) the need to prevent manifest injustice. *GenCorp, Inc. v. Amer. Inter. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "A motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

III.

The first issue is whether two statements allegedly made by Marie Kaelin and Kelly Borders are admissible as "not hearsay" under Federal Rule of Evidence 801(d)(2)(D). Both would constitute double hearsay: Plaintiffs both claim that Marie Kaelin told Plaintiffs that Kelly Borders told Kaelin that the company was looking for reasons to fire Plaintiffs because they used FMLA leave.[1] Plaintiff is introducing both "to prove the truth of the matter asserted in the statement[s]"—specifically, that BellSouth increased its supervision of Plaintiffs and wanted to fire them for taking FMLA leave. Fed R. Civ. P. 801(c)(2). Thus, "in order for double-hearsay statements to be admissible, both statements must be excluded from the hearsay definition." *See United States v. Gibson*, 409 F.3d 325, 337 (6th Cir. 2005) (citing Fed. R. Evid. 805)). If both statements are "not hearsay," the Court may consider them in the underlying motion for summary judgment.

Rule 801(d)(2)(D) provides that a statement is not hearsay if it is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). This rule "is designed to bind the employer where one of its managerial employees makes a statement within the scope of the employee's duties as a manager." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 722 (6th Cir. 2006) (quoting *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 750 (6th Cir.

---

[1] Both Kaelin and Borders adamantly deny making the statements. This is a motion for summary judgment, however, where the Court must construe the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

5

2005)). The "'scope of employment' criterion extends beyond direct decision-makers." *Carter v. Univ. of Toledo*, 349 F.3d 269, 275 (6th Cir. 2006).

A.

The Court first considers the initial layer of hearsay to determine whether Rule 801(d)(2)(D) applies. Marie Kaelin was an employee of Defendant, BellSouth. And when Kaelin allegedly made the comments at issue to Plaintiffs, she was acting within the scope of her employment. Kaelin directly supervised Plaintiffs. She had disciplinary authority over both—as evidenced by the numerous disciplinary reports she signed for both Plaintiffs. Moreover, one of her supervisory responsibilities was to listen in on the calls made by both Plaintiffs. She allegedly told both Plaintiffs that BellSouth was trying to get rid of them because they used FMLA; she also allegedly told both that she was supposed to be listening in on all of their calls. If she did make these statements, both would have been well within her supervisory responsibilities; Rule 801(d)(2)(D) applies and these statements are admissible.

A similar analysis applies to the second hearsay layer. When Kelly Borders allegedly made the comments to Kaelin, she, too, was acting within the scope of her employment with BellSouth. Borders was the Call Center Director in Louisville and oversaw the entire office. She was another rung up the ladder from Plaintiffs; she supervised Plaintiffs' supervisor, Marie Kaelin. Like Kaelin, her responsibilities included enforcing the Code of Ethics among employees and imposing discipline. For example, she received many of the reports of misconduct from sales coaches and the National Observation Team. If she made the comments Plaintiffs claim she made—telling her employee Marie Kaelin to look for reasons to fire Plaintiffs—she was acting within this supervisory capacity.

B.

The Sixth Circuit has found Rule 801(d)(2)(D) to apply in a similar case. In *Grizzell v. City of Columbus Div. of Police*, 461 F.3d at 722, a deputy police chief (Thatcher) allegedly told another deputy police chief (Gammill) that the Chief of Police (Jackson) had decided to use a certain eligibility list for an upcoming promotional process. This created a double hearsay problem, but the Court only considered the admissibility of Thatcher's statement to Gammill. *Id.* The Court held: "Thatcher was the deputy chief—one of only five deputy chiefs reporting directly to Jackson—charged with managing the promotional process for the CPD. When he spoke on the subject of promotions, he was speaking within the scope of his employment." *Id.* Likewise, both Kaelin and Borders were charged with enforcing the BellSouth Code of Conduct, supervising calls, and imposing discipline. When they spoke on these matters, they were acting within the scope of their employment.

Defendant cites *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921 (6th Cir. 1999) to argue that the statements at issue are inadmissible hearsay, but that case confronted another issue. In *Jacklyn*, Plaintiff alleged sex discrimination based largely on the following statement from her own affidavit: "Larry Grewe, my manager, from 1984 until 1990 approximately, advised me that he heard Dean Erlandson state that he did not want any 'skirts' working for him." *Id.* at 926. The court concluded that Grewe's statement did not concern a matter within the scope of Grewe's employment because, though he was a manager, he was not Plaintiff's direct supervisor at the relevant time and "was not involved in any of the critical appraisals of her performance that preceded her leaving work in April 1994." *Id.* at 927-28.

By contrast, Marie Kaelin was Plaintiffs' direct supervisor during all relevant times, and Kelly Borders was just one link up the chain. While neither of them actually participated in

7

Plaintiffs' final termination, both were heavily involved in the numerous disciplinary acts that helped develop Plaintiffs' poor employment records. And given BellSouth's progressive discipline system, these records were certainly considered in the ultimate termination decision. Consequently, the Court believes that *Grizzell* describes the appropriate application of Rule 801(d)(2)(D) in these circumstances. The Court, therefore, should have considered these statements in its analysis of Plaintiffs' claims.

IV.

Now, considering Kaelin's and Borders's statements, the Court must review its analysis of Plaintiffs' FMLA retaliation claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To establish a prima facie case of retaliatory discharge, Plaintiffs must show (1) they availed themselves of a protected right under the FMLA; (2) they were adversely affected by an employment decision; and (3) there was a causal connection between the FMLA leave and the adverse employment action. *See MengelKamp v. Lake Metro. Hous. Auth.*, 549 F. App'x 323, 329-30 (6th Cir. 2013) (citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)). If Plaintiffs establish a prima facie case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets this burden, the burden then shifts back to Plaintiffs to establish that the employer's asserted reasons are mere pretext. *Id.*

A.

In the July 10 order, this Court held that neither Plaintiff could establish the causation element of her prima facie case because, without Kaelin and Borders's statements, Plaintiffs had no evidence other than the six month turnaround between their use of FMLA and their

8

termination. But these statements change the analysis. "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). Now, Plaintiffs have more than a six month turnaround to make this causal connection. If believed—and at this stage the statements must be accepted as true—these almost-identical statements are evidence that Plaintiffs' lawful decisions to take FMLA leave were at least a factor in some of the monitoring and disciplining that ultimately led to Plaintiffs' termination. Plaintiffs have overcome the low burden of establishing a prima facie case.

The next step of the *McDonnell Douglas* framework is unchanged from the earlier order: BellSouth has put forth numerous legitimate, non-discriminatory reasons for disciplining and later terminating both Plaintiffs. *McDonnell Douglas*, 411 U.S. at 802. BellSouth terminated both after finding they violated a host of provisions in the BellSouth employee Code of Conduct.

B.

The final question is whether Plaintiffs produced adequate evidence demonstrating that BellSouth's proffered reasons for the disciplinary actions and terminations were mere pretext. "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). "Whichever method the plaintiff employs, he always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant [] intentionally discriminated against him." *Id.* (quoting *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011) (per curiam)).

9

Plaintiffs do not claim that BellSouth's reasons have no basis in fact or that they were insufficient to warrant BellSouth's disciplinary or termination actions—both had lengthy disciplinary records. Neither effectively denies committing the violations leading to these records, and neither denies that these violations could possibly be grounds for termination. However, the newly considered statements, if believed, are sufficiently direct that a reasonable jury could reject BellSouth's proffered reasons and find that those reasons "did not actually motivate the action." *Id.* The reason is that Borders and Kaelin's statements, if credited, establish that BellSouth subjected both to increased scrutiny and discipline that ultimately led to their terminations.

Evidence of increased scrutiny leading to discipline and termination can support a reasonable inference of a retaliatory motive. In *Hamilton v. Gen. Elec. Corp.*, 556 F.3d 428 (6th Cir. 2009), the plaintiff alleged his employer was "out to get him" after he filed an EEOC complaint—intensifying their scrutiny of the plaintiff's work and disciplining him multiple times before terminating him. The Court reasoned "that when an 'employer . . . waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up [its] true, longstanding motivations for firing the employee,' the employer's actions constitute 'the very definition of pretext.'" *Id.* at 436 (quoting *Jones v. Potter*, 488 F.3d 397, 408 (6th Cir. 2007)). There, the plaintiff "sufficiently alleged that this is exactly what happened to him; [his employer] increased its surveillance of his work after he filed [the EEOC complaint] and then . . . waited for an opportunity to fire him." *Id.* The court concluded: "a reasonable fact-finder could determine that [the employer] waited for, and ultimately contrived, a reason to terminate [the plaintiff] to cloak its true, retaliatory motive for firing him." *Id.* at 437.

Here, Plaintiffs have also alleged sufficient facts to establish pretext at this stage: they both used FMLA leave; they were both warned by their direct supervisor that the employer increased monitoring to find reasons to fire them; this same supervisor disciplined both of them multiple times after they took FMLA leave; ultimately, someone else fired them for violations of company policy (but considered the records both had accumulated in making this decision). If a jury believes Kaelin and Borders told Plaintiffs they were looking for reasons to fire them for using FMLA leave, it could also reasonably conclude BellSouth's proffered reasons for discipline and termination were pretextual.

V.

The Court's reconsidering of these issues will result in the restoration of this case to the Court's docket. However, that does not pre-ordain a particular result at trial. Nor is it necessarily the final word on these issues.

Both the Court's discussion of the admissibility of these statements under Rule 801 and the Court's analysis of the sufficiency of the evidence showing BellSouth's motions are based upon the current record. Presentation of the evidence at trial or a failure of any evidence could result in different rulings at trial. Plaintiffs' inability to obtain evidence as the Court describes could result in a different conclusion as to the sufficiency of the evidence.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' motion to alter or amend is SUSTAINED.

IT IS FURTHER ORDERED that the Court's order dated July 10, 2014, is VACATED.

IT IS FURTHER ORDERED that Defendant's original motion for summary judgment is now DENIED.

The Court will set a conference in the near future.

cc: Counsel of Record